OPINION
{¶ 1} Plaintiff-appellant, Lance B. Salvatore ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas entered upon the completion of a jury trial in this personal injury action.
 {¶ 2} On April 25, 2004, appellant was involved in an automobile accident with defendant-appellee, Meghan M. Findlay ("appellee"). On November 8, 2005, appellant filed a complaint against appellee alleging negligence and seeking damages for injuries sustained as a result of the accident. *Page 2 
 {¶ 3} The matter proceeded to a jury trial before a magistrate of the common pleas court. Prior to trial, the parties stipulated liability; therefore, the issue before the jury pertained to proximate cause and damages only. At the conclusion of the trial, the jury awarded $1,453 in damages. During the trial, the following exchange occurred in the course of cross-examination of appellant's medical expert, Paul Martz, M.D.
 Q: With regard to the medical bills that your office charged for your services, you testified to the amount of those medical services. Were those medical bills submitted to Mr. Salvawtore's health insurance company?
 [Appellant's Counsel]: Objection.
 A: Yes. As far as I know, they were.
 Q: And do you know the amount of the medical expenses that were paid by Mr. Salvatore's health insurance?
 [Appellant's Counsel]: Objection, continuing objection.
 A: Yes.
 Q: And how much of Mr. Salvatore's medical expenses have been paid by his this benefits company?
 A: It appears here that it's $20,055.73[1]
 * * *
 Q: Let's go through the numbers as we go to make it easy, Doctor. $3,921 was the total charge, correct?
 A: That's correct.
 * * *
 Q: There's a column that says TOT payments. It looks like total payments; is that correct?
 A: Total payments, that's correct. *Page 3 
 Q: And how much is that, Doctor?
 A: And that is $964.27.
 Q: And the column beside that is what?
 A: Insurance payments, $784.27.
 Q: And the column beside that? Is that patient payments?
 A: Patient payments, $180.
 Q: And the column beside that is — it looks like total adjustments.
 A: Total adjustments, $20,055.73.[2]
 Q: Is that an amount that would have been written off by your office?
 A: That is correct.
(Martz Depo. 41-43.)
 {¶ 4} As part of the jury instructions, the following was given by the trial court:
 The fact that plaintiff may or may not have received monetary benefits from other sources as a result of his injuries has not been submitted to you and may not be considered by you in determining whether to award compensatory damages to plaintiff or in determining the amount of any such damages.
 Properly submitted medical bills are rebuttable evidence of reasonableness. The reasonable value of medical services is a matter for the jury to determine from all relevant evidence. Both the original medical bills rendered and the amount accepted as full payment are admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care.
 As jurors, you must decide that based upon the evidence, the reasonable value of medical care is the amount originally *Page 4 
billed, the amount the medical provider accepted as payment, or some other amount that you agree upon.
(Tr. at 113.)
 {¶ 5} During their deliberations, the jury submitted the following question, "What was total out of pocket expense not covered by insurance?" The magistrate instructed the jury to "rely on your collective memory to determine the facts of this case."
 {¶ 6} Based upon the introduction of collateral-source benefits, appellant filed a motion for a new trial pursuant to Civ. R. 59, to which appellee filed a memorandum contra. The magistrate denied appellant's motion on July 13, 2007. Thereafter, appellant filed objections to the magistrate's decision, and on August 27, 2007, the trial court denied appellant's motion for a new trial and adopted the decision of the magistrate.
 {¶ 7} This appeal followed and appellant asserts the following two assignments of error for review:
 Assignment of Error No. 1
 The Trial Court erred in denying Plaintiff-Appellant's Motion for a New Trial.
 Assignment of Error No. 2
 The Trial Court erred in admitting into evidence a collateral-source over Plaintiff-Appellant's objection.
 {¶ 8} In his first assignment of error, appellant argues the trial court erred in denying his motion for a new trial pursuant to Civ. R. 59(A), which provides, in relevant part:
 A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: *Page 5 
 (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 * * *
 (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 * * *
 (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.
 {¶ 9} The decision to grant or deny a motion for a new trial pursuant to Civ. R. 59 generally lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.Byrd v. Mickens-Byrd, Franklin App. No. 01AP-946, 2002-Ohio-2579, at ¶ 20, citing Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307,312. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 10} Appellant's arguments of irregularity in the proceedings resulting in an unfair trial, and an error of law occurring at trial brought to the attention of the trial court by appellant made pursuant to Civ. R. 59(A)(1) and (9) respectively, as well as appellant's *Page 6 
second assignment of error, are all based on the trial court's denial of appellant's motion in limine made prior to the commencement of trial. Appellant's motion in limine sought an order from the court excluding any evidence regarding payment of appellant's medical expenses from any collateral source pursuant to Robinson v. Bates (2006),112 Ohio St.3d 17. As set forth previously, on cross-examination, Dr. Martz was questioned regarding the amount he billed for appellant's treatment, as well as the amount paid by insurance and the amount written-off. Appellant's motion in limine with respect to this evidence was overruled.
 {¶ 11} In Robinson, the plaintiff was injured on her landlord's property. The plaintiff proffered her medical bills of $1,919, and stipulated that her insurance company had negotiated the amount of $1,350.43 as payment in full. The trial court refused to admit the original bills and limited her proof of damages to the amount actually paid for treatment. After the plaintiff's case, the trial court granted a directed verdict for the defendant. The Hamilton County Court of Appeals reversed the trial court's granting of the directed verdict, and also held it was error for the trial court to refuse to admit the original medical bills. On appeal to the Supreme Court of Ohio, the court reviewed the admissibility of the medical bills and the collateral-source rule.
 {¶ 12} The collateral-source rule, identified in Pryor v. Webber
(1970), 23 Ohio St.2d 104, is an exception to the general rule that, in a tort action, the measure of damages is that which will compensate and make the plaintiff whole. Robinson, at ¶ 11, citing Pryor, at 107. "Under the collateral-source rule, the plaintiff's receipt of benefits from sources other than the wrongdoer is deemed irrelevant and immaterial on the issue of damages." Id., citing Pryor, at 109. The purpose of the collateral-source rule is to *Page 7 
prevent juries from learning about a plaintiff's income from a source unrelated to the tortfeasor so that a tortfeasor is not given an advantage from third-party payments to plaintiffs. Id.
 {¶ 13} Though not applicable in Robinson, nor in the case at bar because the accrual dates of the causes of action preceded the effective date of the statute, the Robinson court noted the passage of R.C. 2315.20, and its limitation of the collateral-source rule.[3] This statute allows the defendant in a tort action to introduce evidence of any amount payable as a benefit to the plaintiff as a result of damages resulting from an injury. The defendant in Robinson urged the court to hold that a plaintiff should recover only the amount of medical expenses actually paid, while the plaintiff urged that, under the collateral-source rule, a plaintiff should be permitted to introduce evidence of the original amount of billed medical expenses, regardless of what was actually paid.
 {¶ 14} The Robinson court stated:
 The collateral-source rule does not apply to write-offs of expenses that are never paid. The written-off amount of a medical bill differs from the receipt of compensation or services addressed in Pryor. The collateral-source rule excludes only "`evidence of benefits paid by a collateral source.'" (Emphasis added.) Wentling v. Med. Anesthesia Servs., P.A. (1985), 237 Kan. 503, 515, 701 P.2d 939, quoting 3 Minzer, Nates, Kimball, Axelrod Goldstein, Damages in Tort Actions (1984) 17-5, Section 17.00. Because no one pays the write-off, it cannot possibly constitute payment of any benefit from a collateral source. See Moorhead v. Crozer Chester Med. Ctr. (2001), 564 Pa. 156, 165, 765 A.2d 786
(collateral-source rule does not apply to amounts written off by the insurer since those amounts are never paid by any collateral source). Because no one pays the negotiated reduction, admitting evidence of write-offs does not violate the purpose behind the collateral-source rule. The *Page 8 
tortfeasor does not obtain a credit because of payments made by a third party on behalf of the plaintiff.
Id. at ¶ 16. (Emphasis added.)
 {¶ 15} However, the Supreme Court of Ohio went on to state:
 To avoid the creation of separate categories of plaintiffs based on individual insurance coverage, we decline to adopt a categorical rule. Because different insurance arrangements exist, the fairest approach is to make the defendant liable for the reasonable value of plaintiff's medical treatment. Due to the realities of today's insurance and reimbursement system, in any given case, that determination is not necessarily the amount of the original bill or the amount paid. Instead, the reasonable value of medical services is a matter for the jury to determine from all relevant evidence. Both the original medical bill rendered and the amount accepted as full payment are admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care.
 The jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between. Any difference between the original amount of a medical bill and the amount accepted as the bill's full payment is not a "benefit" under the collateral-source rule because it is not a payment, but both the original bill and the amount accepted are evidence relevant to the reasonable value of medical expenses.
Id. at ¶ 17-18. (Emphasis added.)
 {¶ 16} Appellant suggests Robinson was concerned only with the introduction of the difference between amounts billed and amounts paid for medical services. Additionally, appellant zealously emphasizes that, in Robinson, the parties stipulated to such difference; whereas, in this case, the parties did not. However, as stated in Schlegel v. Song
(N.D.Ohio 2008), 2008 U.S. Dist. LEXIS 32981, that there is no such stipulation is *Page 9 
immaterial because the Robinson court did not base its decision on the stipulation present therein, but, rather, based its decision on the lack of "benefit" received by the plaintiff.
 {¶ 17} Based on the foregoing, we find no error in the trial court's decision to overrule appellant's motion in limine with respect to portions of Dr. Martz's testimony made pursuant to the collateral-source rule.
 {¶ 18} Appellant also argues pursuant to Civ. R. 59(A)(4) that he was entitled to a new trial because inadequate damages given under the influence of passion or prejudice were awarded by the jury. Appellant contends it was undisputed that appellee was negligent and that appellant sustained a contusion or strain of his left shoulder as a result of the accident. Even taking the "write-off testimony" into account, appellant avers he undisputedly incurred at least $4,000 in medical expenses for treatment of his injuries. Thus, according to appellant, the $1,453 jury award failed to compensate him for medical expenses, not to mention pain and suffering.
 {¶ 19} In addition to noting the disparity of the verdict amount, appellant contends the jury was allowed to hear incompetent evidence, i.e., the collateral-source medical payments made on appellant's behalf. This contention as discussed supra is based on Robinson. Appellant asserts "the jury was clearly presented with incompetent evidence" that caused them to submit the following question during deliberations: "What was total out of pocket expenses not covered by insurance?" (Appellant's brief, at 8.) The trial court held appellant produced no evidence that the jury disregarded the instruction given to them regarding collateral-source benefits. On appeal, appellant does not challenge the trial court's answer to the jury's question, that the jury was to rely on their collective *Page 10 
memories, but, instead, appellant asserts this question provides evidence of the incompetent evidence presented to the jury.
 {¶ 20} The decision whether to grant a motion for a new trial pursuant to Civ. R. 54(A)(4) rests within the sound discretion of the trial court, and it will not be disturbed on appeal absent an abuse of that discretion. Miller v. Lindsay-Green, Inc., Franklin App. No. 04AP-848,2005-Ohio-6366, at ¶ 75, citing Jeanne v. Hawkes Hosp. of Mt.Carmel (1991), 74 Ohio App.3d 246, 257. In assessing whether a trial court has abused its discretion, a reviewing court must consider the amount of the verdict, whether the jury considered incompetent evidence, and whether improper conduct by the court or counsel potentially influenced the jury. Id., citing Dillon v. Bundy (1991),72 Ohio App.3d 767, 774. Although the size of the verdict is a factor to be considered, it alone does not afford proof of passion or prejudice. Id.;Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 65. Rather, "there must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Id., quoting Shoemaker, supra, at 65. Ultimately, a trial court should not grant a new trial on the basis of passion or prejudice unless the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities. Id., citing Berge v. Columbus CommunityCable Access (1999), 136 Ohio App.3d 281, 317, quoting Pena v. N.E. OhioEmergency Affiliates, Inc. (1995), 108 Ohio App.3d 96, 104.
 {¶ 21} However, we have already concluded the evidence appellant suggests should have been excluded was admissible. Secondly, as noted previously, the trial court instructed the jury prior to deliberations that monetary benefits from other sources as a result of appellant's injuries was not to be considered in determining whether, and in what *Page 11 
amounts, damages would be awarded to appellant. "A jury is presumed to follow the instructions given it by the court." Estate of Robert L.Beavers v. Knapp, Franklin App. No. 07AP-612, 2008-Ohio-2023, at ¶ 64, citing State v. Henderson (1988), 39 Ohio St.3d 24. Therefore, we must presume the jury followed the trial court's direction. We find appellant engages in unfounded speculation as to why the jury asked this question. We find this particularly so given that also contained in the trial court's jury instructions was for the jury to determine the reasonable value of medical services, and that both the original medical bills rendered and the amount accepted as payment are admissible to prove the reasonableness and necessity of the charges. We could speculate the jury asked this question because it was improperly using evidence, or we could speculate the jury asked this question because it was trying to determine the reasonableness of treatment value. We decline to speculate, however, as to why the jury asked a certain question for purposes of its deliberations, as it is not the function of this court to do so. Roeder v. Coleman (Apr. 26, 1994), Franklin App. No. 93AP-889. See, also, State v. Holloman, Franklin App. No. 06AP-01, 2007-Ohio-840;State v. Martin, Franklin App. No. 07AP-555, 2007-Ohio-6603.
 {¶ 22} Therefore, the only remaining contention with respect to being entitled to a new trial pursuant to Civ. R. 59(A)(4) is the amount of the jury's award. As this court has stated, "the size of the verdict alone cannot prove passion or prejudice." Miller, at ¶ 76. See, also,Watkins v. Roetzel, Medina App. No. 07CA0024-M, 2008-Ohio-1881 (no abuse of discretion in the denial of a motion for a new trial based on inadequate damages award where there was nothing in the record to support a showing that the jury's passion or prejudice was inflamed and the size of the award was insufficient to establish the same); *Page 12 Dyson v. V V Appliance Parts, Inc., Summit App. No. 23661,2008-Ohio-782 (even assuming as true plaintiff's declaration that the jury's damage award was inadequate, there was no assertion or support in the record that the award appeared to be given under the influence of passion or prejudice); Chambers v. Jenkins, Stark App. No. 2007 CA 00131, 2008-Ohio-638 (other than plaintiff's assertions that the jury's award was inadequate, there was no evidence to suggest the jury was influenced by passion or prejudice).
 {¶ 23} Thus, even if appellant is correct in his assertion that the damages awarded were inadequate, we find no evidence to support his argument that the jury's sensibilities were wrongfully inflamed. Therefore, we conclude the trial court did not abuse its discretion when it found the damages award was not a result of passion or prejudice, and, therefore, the trial court did not err in denying appellant's motion for a new trial pursuant to Civ. R. 59(A)(4).
 {¶ 24} Pursuant to Civ. R. 59(A)(6), appellant contends the jury's award of $1,453 is against the manifest weight of the evidence because he presented uncontroverted evidence of medical expenses that exceed the jury's damage award without even considering lost wages, and pain and suffering. As stated by this court in Duffer v. Powell, Franklin App. No. 05AP-859, 2006-Ohio-2613:
 Under Civ. R. 59(A)(6), a trial court grants a new trial if the "judgment is not sustained by the weight of the evidence[.]" In a Civ. R. 59(A)(6) motion, the trial court weighs the evidence and considers the credibility of the witnesses. Seymour v. Pierson, Stark App. No. 2005A00218, 2006 Ohio 961, at P46. A judgment is not against the manifest weight of the evidence if there is competent, credible evidence to support the jury's verdict. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. *Page 13 
 When we review a trial court's decision on a Civ. R. 59(A)(6) motion for new trial, we do not directly review whether the judgment was against the manifest weight of the evidence. Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448, 1996 Ohio 311, 659 N.E.2d 1242. Rather, we determine whether the trial court abused its discretion in ruling on the Civ. R. 59(A)(6) motion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140. Such deference to the trial court's decision recognizes that the trial court is in a better position to determine credibility issues. Malone at 448.
Id. at ¶ 32-33.
 {¶ 25} The trial court determined it was within the province of the jury to determine whether appellant's complaints and medical treatments were proximately caused by appellee. The trial court went on to conclude that simply because the jury's verdict was small does not mean that the jury clearly lost its way in making its determination. Despite the trial court's conclusion, appellant asserts there was at least $4,000 in uncontroverted medical bills for treatment of injuries sustained as a result of appellee's undisputed negligence, and, therefore, the judgment is clearly not supported by the weight of the evidence.
 {¶ 26} Upon review of the record, though appellee admitted liability for causing the accident, it is clear the existence and extent of any injuries sustained by appellant as a result of the accident were contested. Proximate cause and damages were strongly contested by appellee at trial.
 {¶ 27} Following the accident, appellant reported to the officer at the scene that he was not injured, and he was able to drive his vehicle away from the accident scene. *Page 14 
Appellant presented to his family physician the day following the collision complaining primarily of left shoulder pain. Dr. Martz testified that in his opinion, appellant suffered a contusion to his left shoulder. Therefore, he ordered an MRI, which revealed a tendon tear. Dr. Martz attributed both conditions to the accident that occurred on April 25, 2004.
 {¶ 28} Dr. Kumler gave the following opinion:
 My opinion is that he sustained a contusion and strain of his left shoulder at the time of the accident. His lumbar pain wasn't quite as clear, but it was consistent with a lumbar strain, but he had no objective findings of that at the time of my examination, and his findings on his MR[I] were just consistent with the degenerative changes you would expect to see in an active individual.
(Kumler depo. at 16.)
 {¶ 29} Dr. Kumler opined appellant's injuries were all soft tissue injuries, and there were no objective findings he could relate to the April 25, 2004 accident. When asked if the tear in the rotator cuff was caused by the subject accident, Dr. Kumler responded:
 I do have an opinion, and my opinion was that the tear was not caused by the accident, but was a result of chronic use and normal wear and tear.
Id. at 20.
 {¶ 30} Dr. Kumler further opined appellant's condition was not permanent, and there was no need for further treatment. Dr. Kumler agreed that "treatment and the medications" were necessary, but that anything related to the rotator cuff treatment was not related to the accident at issue.
 {¶ 31} The record clearly demonstrates controversy with respect to the injury and the extent of such caused by the April 25, 2004 accident. The jury, as trier of fact, was free to believe or disbelieve all or any part of the testimony of any witness. Whitestone *Page 15 Co. v. Stittsworth, Franklin App. No. 06AP-371, 2007-Ohio-233. The jury had the opportunity to observe the demeanor of the witnesses, consider their credibility, and evaluate the weight of the evidence. Duncan v.Grant Trucking, Inc. (Dec. 16, 1982), Franklin App. No. 82AP-272. Upon review of the record, we cannot conclude the trial court abused its discretion in denying appellant's motion for a new trial pursuant to Civ. R. 59(A)(6), as there exists in the record competent, credible evidence to support the jury's verdict.
 {¶ 32} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BROWN and TYACK, JJ., concur.
[1] While the transcript indicates $20,055.73, plaintiff's Exhibit 1 states $2,055.73.
[2] Though the transcript indicates $20,055.73, we again note Exhibit 1 indicates $2,055.73.
[3] The effective date of R.C. 2315.20 was April 7, 2005. The cause of action accrued in Robinson on April 21, 2001, and in the instant action on April 25, 2004. *Page 1